UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURA DANA,

          Plaintiff,

    v.

THE HERSHEY COMPANY, et al.,

          Defendants.

Case No.  15-cv-04453-JCS

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 22

## I.    INTRODUCTION

"The use of child slave labor in the Ivory Coast is a humanitarian tragedy."  *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1016 (9th Cir. 2014).  The fact that major international corporations source ingredients for their products from supply chains involving slavery and the worst forms of child labor raises significant ethical questions.  The issue before this Court, however, is whether California law requires corporations to inform customers of that fact on their product packaging and point of sale advertising.  Every court to consider the issue has held that it does not.  This Court agrees.

This is a putative class action in which Plaintiff Laura Dana claims that Defendants The Hershey Company and Hershey Chocolate & Confectionary Corporation (collectively, "Hershey") violated California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code §§ 17200−17210), Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code §§ 1750−1784), and False Advertising Law ("FAL," Cal. Bus. & Prof. Code §§ 17500−17509) by failing to disclose on the packaging of Hershey's chocolate products that some of the cocoa used therein originated at farms in Côte d'Ivoire (also known as the Ivory Coast) that use slave labor and the worst forms of child labor.

United States District Court
Northern District of California

Hershey moves to dismiss all claims.  The Court held a hearing on March 18, 2016.[1]  For the reasons stated below, Hershey's Motion is GRANTED, and this action is dismissed with prejudice.[2]

## II.    BACKGROUND

### A.    Allegations of the Complaint[3]

Côte d'Ivoire is the world's largest producer of cocoa beans, the raw ingredient for chocolate, and supplies 40% of global cocoa production and 47% of total imports to the United States.  Compl. (dkt. 1) ¶¶ 19, 46.  Slave labor and the worst forms of child labor are common in Ivorian cocoa production, as is well documented by United States government agencies, academic studies, nonprofit organizations, investigative journalists, and former laborers.  *Id.* ¶¶ 5−8, 23−25, 32−42.  Children are frequently injured in the course of dangerous work involving machetes, chemicals, and heavy loads, and workers (both children and adults) may be beaten, whipped, and locked in to prevent escape.  *Id.* ¶¶ 23−25.  The Ninth Circuit has also acknowledged the existence of such conditions.  *Id.* ¶ 26; *Doe I*, 766 F.3d at 1016.

Hershey is one of the largest chocolate companies in the United States and sells a number of popular chocolate products.  *Id.* ¶ 3.  In 2001, members if the United States chocolate industry including Hershey signed a voluntary protocol, negotiated by Representative Eliot Engel and Senator Tom Harkin, to develop standards for certifying chocolate produced without labor abuses.  *Id.* ¶ 27.  After failing to meet the initial 2005 deadline, the industry extended the self-imposed deadline to 2008, then to 2010, and then to 2020.  *Id.* ¶¶ 29−31.

Despite adopting a "supplier code" that prohibits child labor and forced labor, and a "Corporate Social Responsibility Report" stating that "Hershey has zero tolerance for the worst forms of child labor in its supply chain," Hershey sources much of its chocolate from Côte d'Ivoire through a multi-level supply chain of independent growers, cooperatives, distributors, and

---

[1] The Court also heard argument in *McCoy v. Nestle USA, Inc.*, No. 15-cv-4451, which involves different parties but substantially similar claims and arguments.  A separate order has been published concurrently in that case.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[3] Dana's allegations are taken as true in the context of a motion to dismiss.

United States District Court
Northern District of California

United States District Court
Northern District of California

other intermediaries.  *Id.* ¶¶ 4, 11, 20, 45, 47 51, 52.  "Hershey acknowledges . . . the child and slave labor in its Ivorian supply chain,"[4] but does not disclose the existence of those labor abuses on its product labels.  *Id.* ¶¶ 21, 22, 48, 50.

Dana "has purchased Hershey Chocolate Products at various retail stores including Target and Walmart in Brentwood and Antioch, California from 2011 through 2014."  *Id.* ¶ 13.  Citing studies showing that consumers will pay a premium for ethically produced coffee, clothing, and seafood, *id.* ¶¶ 55−59, Dana alleges that she and other customers "would not have purchased Hershey Chocolate Products or paid as much for them" if Hershey had disclosed labor violations on the product labels.  *Id.* ¶ 10, *see also id.* ¶¶ 60, 95, 106.

The Complaint includes three claims, under the UCL, the CLRA, and the FAL, respectively.  The UCL claim is based on three separate theories arising from Hershey's failure to disclose labor abuses in its supply chain on the packaging of its chocolate products: (1) the omission is "unlawful," because it violates the CLRA, *id.* ¶ 74; (2) the omission is "unfair," because the abusive labor practices themselves are immoral and the failure to disclose them impairs competition and prevents consumers from making informed decisions, *id.* ¶ 75; and (3) the omission is "fraudulent" because it is likely to deceive a reasonable consumer and the true facts would be material to reasonable consumer, *id.* ¶ 76.  The CLRA claim asserts that Hershey's failure to disclose labor abuses in its supply chain constitutes a misrepresentation of the "source, characteristics, and standard" of the products.  *Id.* ¶ 91, *see also id.* ¶¶ 88−90 (citing Cal. Civ. Code § 1770(a)(2), (5), (7)).  The FAL claim asserts that Hershey had a duty to disclose the labor abuses in its supply chain because it had superior knowledge as compared to customers, and because it made "partial representations and/or misrepresentations to the contrary."  *Id.* ¶ 102.  In her Opposition, Dana disclaims any theory of an obligation to disclose arising from partial misrepresentations.  Opp'n (dkt. 25) at 13 n.58.

---

[4] Certain Hershey products, sold under the brand names Bliss, Dagoba, and Scharffen Berger, are certified by the Rainforest Alliance (a nongovernmental organization) as using ethically produced cocoa and are not at issue in this case.  Compl. ¶ 49.

1

United States District Court
Northern District of California

**B.     Procedural History**

Dana filed this action on September 28, 2015, seeking to represent herself and other similarly situated consumers who purchased Hershey chocolate products in the last four years. *See generally* Compl.  Dana's counsel also represents plaintiffs who filed similar actions against two other large chocolate manufacturers, Mars and Nestlé.  *See Hodsdon v. Mars, Inc.*, No. 3:15-cv-04450-RS (N.D. Cal.); *McCoy v. Nestlé USA, Inc.*, No. 3:15-cv-04451 (N.D. Cal.).  Defendants moved to dismiss in all three cases.  Judge Seeborg granted the motion to dismiss in *Hodsdon*, as discussed in detail below.  The undersigned heard argument on the motion in *McCoy* concurrently with Hershey's motion in the present case.[5]

**C.     Parties' Arguments**

Hershey argues that the case must be dismissed for several reasons, starting with the safe harbor doctrine, which provides that plaintiffs cannot use California's consumer protection laws to pursue relief that is foreclosed by other, more specific statutes.  Mot. (dkt. 22) at 6−9.  According to Hershey, the California Transparency in Supply Chains Act of 2010 (the "Supply Chains Act") bars Dana's claims because it regulates disclosures related to labor abuses in supply chains and does not require the disclosures Dana seeks.  *Id.*  Dana responds that the Supply Chains Act does not specifically permit Hershey's omissions or bar Dana's claims, and that the labor violations addressed by that statute (slavery and human trafficking) do not encompass all of the violations at issue here (which also include dangerous but non-slave child labor).  Opp'n at 5−10.

Next, Hershey argues that it has no duty to disclose labor conditions in its supply chain because the information at issue does not relate to product safety, and because Hershey did not

---

[5] Four other cases based on nondisclosure of supply chain labor violations, brought by plaintiffs who also share counsel with Dana, have been dismissed for failure to state a claim in the Central District of California.  *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234 (C.D. Cal. Feb. 5, 2016); *Barber v. Nestle USA, Inc.*, No. SA CV 15-01364-CJC (AGRx), 2015 WL 9309553 (C.D. Cal. Dec. 9, 2015); *De Rosa v. Tri-Union Seafoods, LLC*, No. CV 15-7540-CJC (AGRx), 2016 WL 524059 (C.D. Cal. Jan. 15, 2016) (summarily dismissing for the reasons stated in *Barber*); *Hughes v. Big Heart Pet Brands*, No. CV 15-8007-CJC (AGRx), 2016 WL 524057 (C.D. Cal. Jan. 15, 2016) (same).  Those cases, all of which concern seafood (or pet food that includes seafood products) rather than chocolate, were decided at least in part based on the safe harbor doctrine, which *Hodsdon*, *McCoy*, and this Order decline to reach.  The four Central District cases are presently pending on appeal before the Ninth Circuit.

have exclusive knowledge, actively conceal the information, make misleading partial representations, or have a fiduciary relationship with Dana.  Mot. at 9−17.  Dana contends that the limitation of the duty to disclose to safety issues only applies in post-warranty product defect cases, which this is not, and that a duty arises from Hershey's superior (albeit not actually exclusive) knowledge of labor abuses in its supply chain.  Opp'n at 11−15.  She "does not here contend that Hershey's partial disclosures give rise to its duty to disclose."  *Id.* at 13 n.58.

Turning to Dana's specific claims, Hershey argues that Dana cannot proceed on a UCL claim for "unlawful" conduct because her CLRA claim is deficient, nor for "fraudulent" conduct because such a claim does not encompass omissions absent a duty to disclose.  Mot. at 17−18.  Dana responds that her CLRA claim is sufficient to support an "unlawful conduct" UCL claim, and the "fraudulent conduct" claim should survive because she contends that Hershey did have a duty to disclose.  Opp'n at 17−18.  As for "unfair" conduct, Hershey contends that Dana cannot succeed under any of the tests that courts have used, because she has not identified a legislative policy against Hershey's non-disclosure, the non-disclosure at issue is not inherently immoral or oppressive, and there is no substantial injury to consumers.  Mot. at 18−21.  Dana argues that the labor abuses in Hershey's supply chain contravene legislatively declared policies in the form of United Nations prohibitions of forced labor and the worst forms of child labor that the United States has ratified, and that those abuses are immoral and unethical.  Opp'n at 18−19.  She also contends that the harm of deceiving consumers outweighs the cost to Hershey of changings its product labeling.  *Id.* at 19−20.  Hershey notes in reply that the United Nations sources that Dana cites relate only to labor practices, not product labeling.  Reply (dkt. 30) at 10.

Hershey argues that Dana's CLRA claim fails because Hershey had no duty to disclose, and also because the omissions regarding labor abuses do not relate to the specific provisions of the statute Dana cites, which govern representations regarding attributes including the "source," "characteristics," and "standard" of goods.  Mot. at 21−22.  Dana contends that "Hershey's failure to disclose that its supply chain is not child and slave free is likely to deceive a reasonable consumer regarding the chocolate's source (from plantations using child and slave labor) and characteristics/standard (produced by child and slave labor)."  Opp'n at 20.  Hershey responds that

5

United States District Court
Northern District of California

the provisions at issue are intended "to target misrepresentations regarding the identity of the seller, . . . a product's physical features or capabilities, . . . or its inherent level of quality or performance," not the labor standards used to produce the product.  Reply at 12.

Hershey does not address Dana's FAL claim separately in detail, but contends in a footnote that the FAL only governs affirmative misrepresentations, not omissions.  Mot. at 17 n.18.  Dana disputes that proposition and argues that some cases have allowed FAL claims to proceed based on omissions.  Opp'n at 17.

According to Hershey, Dana lacks both Article III and statutory standing to bring any of her claims because she cannot trace the cocoa used in the specific chocolate products she bought back to a specific plantation, and thus cannot know whether the products she bought were produced with slave or child labor.  Mot. at 22−23.  Hershey contends that without that knowledge, whether the products Dana bought were misrepresented (even under Dana's theory of misrepresentation by omission) is uncertain, and if they were not, Dana has not suffered any cognizable injury.  *Id.*  Dana responds that her injury and standing arise from misrepresentation of the supply chain for the chocolate, and if Hershey had better disclosed the labor abuses in the supply chain, she would not have bought the products regardless of whether she knew the origin of the cocoa in a specific item.  Opp'n at 22.  Dana relies on case law holding that a consumer who purchased or paid more for a product based on misrepresentations has both constitutional and statutory standing to bring claims under California's consumer protection laws.  Opp'n at 21−22 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)).

Finally, Hershey argues that requiring the labeling Dana seeks would compel speech in violation of the First Amendment.  Mot. at 23−25.  Dana contends that laws against misleading advertising are constitutional, and that a mere rational basis is required to support laws compelling affirmative factual product labeling to avoid misleading consumers.  Opp'n at 23−25 (citing, *e.g.*, *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)).  Hershey responds that Dana has not alleged any misleading affirmative representations that require labeling to redress consumer confusion, and that the disclosure Dana seeks is not "'purely factual and

1    uncontroversial.'" Reply at 14−15 (quoting *Zauderer*, 471 U.S. at 651).

2        **D.**   *Hodsdon v. Mars, Inc.*

3        In *Hodsdon*, Judge Seeborg granted a motion by chocolate manufacturer Mars, Inc. to

4    dismiss claims very similar those in the case at hand. *Hodsdon v. Mars, Inc.*, __ F. Supp. 3d __,

5    No. 15-CV-04450-RS, 2016 WL 627383 (N.D. Cal. Feb. 17, 2016). As a preliminary matter, the

6    court held that the plaintiff had standing because: (1) "California law permits litigants to pursue

7    claims under the UCL, CLRA, and FAL if they show . . . that 'the consumer paid more than he or

8    she actually valued the product'"; (2) the plaintiff adequately alleged that the use of forced labor in

9    the supply chain caused him to devalue the product even if he could not prove that forced labor

10   was used to produce the specific chocolate products that he purchased; and (3) the plaintiff

11   adequately alleged that he saw the product labels before he purchased the products. *Id.* at *3

12   (quoting *Hinojos*, 718 F.3d at 1104). Turning to the merits, however, the court held that the

13   plaintiff failed to state a claim under California law.

14       With respect to the FAL claim, the court reconciled cases holding that omissions were not

15   actionable with others that allowed FAL claims based on omissions to proceed, ultimately

16   determining that omissions accompanying misleading incomplete statements are actionable, but

17   omissions with no corresponding statements are not. *Id.* at *4. *Compare Norcia v. Samsung

18   Telecomms. Am.*, LLC, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015)

19   ("There can be no FAL claim where there is no 'statement' at all."), *and Stanwood v. Mary Kay,

20   Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (same), *with In re Sony Gaming Networks &

21   Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (denying motion to

22   dismiss where defendant claimed to have taken steps to secure information but failed to disclose

23   security deficiencies), *and Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC

24   (ANx), 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss where

25   the defendant marketed a washing machine as "sanitary" but failed to disclose its tendency to

26   accumulate mold). Because the plaintiff in *Hodsdon* "asserted the former type of claim, i.e., that

27   Mars violated the FAL by failing to issue any statement at all," the court dismissed the claim.

28   *Hodsdon*, 2016 WL 627383, at *4.

United States District Court
Northern District of California

1    Next, the court turned to the plaintiff's CLRA claim and his claim under the "unlawful"

2    prong of the UCL, which was based on the purported CLRA violation. *Id.* at \*5−6. Noting the

3    Ninth Circuit's holding that "California courts have generally rejected a broad obligation to

4    disclose," the court looked to whether Mars had any such obligation. *Id.* at \*5. The court held

5    that despite one case to the contrary, "the overwhelming majority of courts to consider the issue"

6    have held that omissions are only actionable under the CLRA if they relate to product safety or

7    defects. *Id.* at \*5−6. Because the omissions at issue related instead to "admittedly horrific labor

8    practices" in the supply chain, the court dismissed the plaintiff's CLRA claim and the "unlawful

9    conduct" aspect of the UCL claim that derived from it. *Id.* at \*6.

10    The plaintiff also brought UCL claims based on the "fraudulent" and "unfair" prongs of the

11    statute. The court followed two California appellate decisions holding that omissions cannot

12    satisfy the "fraudulent" prong unless there was a duty to disclose, and therefore dismissed that

13    claim. *Id.* at \*6 (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557

14    (2007); *Daugherty v. Am. Honda Co.*, 144 Cal. App. 4th 824, 838 (2006)). As for the "unfair"

15    prong, the court held that the plaintiff's complaint did not satisfy any of the tests used by

16    California courts to assess such claims: (1) unlike the underlying labor conditions themselves, the

17    lack of disclosure could not be said to be "'immoral, unethical, oppressive, unscrupulous or

18    substantially injurious to consumers,'" because the harm was merely the purchase of a chocolate

19    bar and the information that was absent from the packaging was readily available elsewhere; and

20    (2) again unlike the underlying labor conditions, the harm from lack of disclosure was not tied to

21    any established public policy expressed in "'specific constitutional, statutory, or regulatory

22    provisions.'" *Id.* at \*7 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App.

23    4th 861, 887 (1999); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal.

24    2014)). The court therefore dismissed the UCL claim in its entirety.

25    Because the plaintiff failed to state a claim for the reasons summarized above, the court did

26    not reach Mars's argument that the Supply Chains Act creates a safe harbor, but expressed doubt

27    that any such harbor is as broad as Mars contended. *Id.* at \*8−9. The court found that amendment

28    would be futile and denied leave to amend. *Id.* at \*9. Hodsdon's appeal of Judge Seeborg's

1  decision is currently pending before the Ninth Circuit.

2  **III.    ANALYSIS**

3     **A.    Legal Standard**

4        A complaint may be dismissed for failure to state a claim on which relief can be granted

5  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss

6  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

7  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

8  is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading

9  which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim

10  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

11        In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

12  takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

13  non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

14  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

15  would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

16  1990).  A complaint must "contain either direct or inferential allegations respecting all the material

17  elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

18  *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

19  1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

20  of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

21  (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked

22  assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

23  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient

24  factual allegations to "allow[] the court to draw the reasonable inference that the defendant is

25  liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

26        Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for

27  claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the

28  circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Ninth Circuit has held

1    that in order to meet this standard, a "complaint must specify such facts as the times, dates, places,

2    benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6

3    F.3d 666, 672 (9th Cir. 1993); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir.

4    2013). The heightened standard does not apply to "[m]alice, intent, knowledge, and other

5    conditions of a person's mind." Fed. R. Civ. P. 9(b).

6          Hershey also moves to dismiss under Rule 12(b)(1), apparently on the basis that the Court

7    lacks jurisdiction because Dana lacks Article III standing. *See* Mot. at ECF p. 2 (Notice of Motion

8    identifying Rule 12(b)(1) as a basis for dismissal); *id.* at 22−23 (arguing that Dana lacks standing).

9    Where, as here, a jurisdictional challenge is based on the allegations of a plaintiff's complaint

10   rather than on extrinsic evidence, courts "assume [the plaintiff's] allegations to be true and draw

11   all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

12   "[T]he inquiry is therefore much like a Rule 12(b)(6) analysis." *Animal Legal Def. Fund v. HVFG*

13   *LLC*, 939 F. Supp. 2d 992, 997 (N.D. Cal. 2013).

14         **B.    Standing**

15         Hershey argues that Dana lacks Article III and statutory standing to pursue these claims

16   because she does not and cannot allege that the specific products she purchased were made from

17   cocoa produced with the labor abuses at issue in this case—slave labor or the worst forms of child

18   labor—and therefore fails to allege an actual, particularized injury. Mot. at 22−23; Reply at

19   12−14. The parties agree that Hershey currently cannot trace the cocoa used in a particular

20   Hershey chocolate product to a specific plantation, and there is thus no way to know what labor

21   practices were used in its production. *See* Compl. ¶ 10; Mot. at 22; Reply at 13. Dana argues that

22   she has standing because she would have either not purchased or paid less for Hershey's products

23   if she had known that the *supply chain* involved the labor abuses at issue, regardless of where the

24   cocoa in a particular chocolate bar originated. Opp'n at 22. Judge Seeborg held that the plaintiff

25   in *Hodsdon* had standing under similar circumstances, and the Court agrees that Dana has standing

26   here. *See Hodsdon*, 2016 WL 627383, at *3.

27         The issue of Article III standing is straightforward. "[W]hen, as here, 'Plaintiffs contend

28   that class members paid more for [a product] than they otherwise would have paid, or bought it

United States District Court
Northern District of California

1    when they otherwise would not have done so' they have suffered an Article III injury in fact."

2    *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Mazza v. Am. Honda*

3    *Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)) (second alteration in original).

4         Dana also has standing under the California statutes at issue. The UCL and FAL require

5    that private plaintiffs "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result

6    of the unfair competition" or false advertising. *Hinojos*, 718 F.3d at 1103 (quoting Cal. Bus. &

7    Prof. Code § 17204 (UCL); citing *id.* § 17535 (FAL)) (alterations in original).[6] In *Hinojos*, the

8    Ninth Circuit examined the California Supreme Court's decision in *Kwikset Corp. v. Superior*

9    *Court*, which held that a "'consumer who relies on a product label and challenges a

10   misrepresentation contained therein can satisfy the standing requirement of [the UCL and the

11   FAL] by alleging . . . that he or she would not have bought the product but for the

12   misrepresentation,'" and that "such allegations are sufficient to establish economic injury within

13   the meaning of [those statutes]." *Id.* at 1105 (quoting *Kwikset*, 51 Cal. 4th 310, 330 (2011))

14   (ellipsis in original).

15        In both *Kwikset*, where the defendant marketed locks as "Made in U.S.A." despite some

16   foreign components and assembly work, and *Hinojos*, where the defendant allegedly advertised its

17   normal prices as "reduced," plaintiffs who relied on those representation had standing to sue under

18   the UCL and FAL. *Id.* at 1107; *Kwikset*, 51 Cal. 4th at 330. Those courts also listed a number of

19   other scenarios where a plaintiff's reliance on false advertising could give rise to standing: "meat

20   falsely labeled as kosher or halal, wine labeled with the wrong region or year, blood diamonds

21   mislabeled as conflict-free, and goods falsely suggesting they were produced by union labor."

22   *Hinojos*, 718 F.3d at 1105 (citing *Kwikset*, 51 Cal. 4th at 328−29). Dana's claim that she would

23   have paid less for (or declined to purchase) Hershey's products but for Hershey's

24   misrepresentations of the labor practices in its supply chain fits well within these examples.

25        The Ninth Circuit's decision in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), does

26

27   _____

         [6] The CLRA allows a consumer who has suffered "any damage" to sue, and "any plaintiff who
28   has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*,
     have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos*, 718 F.3d at
     1107−08.

United States District Court
Northern District of California

1    not deprive Dana of standing.  *See* Mot. at 22; Reply at 13 (citing *Birdsong* for the argument that

2    Dana lacks standing unless the specific product she purchased was produced by slave labor or

3    child labor).  In that case, the plaintiffs alleged that Apple violated the UCL by selling iPods that

4    were capable of producing dangerous volume levels and thus causing hearing loss.  *Id.* at 957.

5    The Ninth Circuit affirmed the district court's holding that the plaintiffs failed to show a

6    particularized and actual injury sufficient for standing under the UCL—despite the plaintiffs'

7    argument that the risk of hearing loss diminished the value of the iPods—in part because "the

8    alleged loss in value . . . rests on a hypothetical risk of hearing loss to other consumers who may

9    or may not choose to use their iPods in a risky manner," and the plaintiffs did "not claim that they,

10   or anyone else, have suffered or [were] substantially certain to suffer hearing loss from using an

11   iPod." *Id.* at 959−62.  Here, in contrast, Dana alleges that the value of the chocolate products was

12   diminished because consumers did not wish to support a supply chain that included severe labor

13   abuses.  The alleged damage was therefore done *by the purchase itself*, not by any contingency

14   that might happen after the purchase.[7]

15          Hershey argues, essentially, that a UCL claim based on misrepresentation of labor

16   practices can only succeed where a plaintiff is *certain* that the objectionable practice was used to

17   produce the specific item that the plaintiff purchased.  *See* Reply at 12−13.  Stepping back from

18   the fact pattern of this case, that argument would dictate that even if Hershey had—

19   hypothetically—concealed Ivorian labor conditions from its customers, falsely labeled all of its

20   chocolate as certified to be free of child labor, and run a fraudulent national ad campaign touting

21   its child-labor-free chocolate, a customer who relied on that false promotion would lack standing

22

23          [7] Hershey also cites a number of district court cases finding that plaintiff purchasers did not
24   have standing merely because products were defective as to *other* purchasers.  Mot. at 23 & n.21
     (citing *In re McNeil Consumer Healthcare, Mktg. & Sales Practices Litig.*, No. MDL 2190, 2011
25   WL 2802854 (E.D. Pa. July 15, 2011); *Meaunrit v. The Pinnacle Foods Grp., LLC*, No. C 09-
     04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010); *Myers-Armstrong v. Actavis Totowa,*
26   *LLC*, No. C 08-04741 WHA, 2009 WL 1082026, (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x
     545 (9th Cir. 2010); *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597 (N.D. Cal. Apr.
27   16, 2009)).  To the extent those cases are consistent with the more recent Ninth Circuit decisions
     in *Hinojos* and *Mazza*, all of them—like *Birdsong*—involved at most an unrealized risk of future
28   harm, and are not analogous to the case at hand where Dana alleges that failure to disclose ethical
     practices in the supply chain affected her willingness to purchase and pay for the products.

to sue for fraudulent business practices and false advertising so long as some fraction of Hershey's cocoa met those descriptions and the customer was unable to tell what labor conditions produced the cocoa in the actual product he or she purchased.  Such a result would undermine the holding of *Hinojos* and *Kwikset*.[8]  The difference between that hypothetical scenario and Dana's allegation of mere omission is critical to the outcome of the present motion, as discussed in the sections below, but it is a difference relevant to the merits of the claims, not to standing.

"'For a significant segment of the buying public, labor practices do matter in making consumer choices.'"  *Kwikset*, 51 Cal. 4th at 329 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002)).  It is plausible that a consumer would place less value on a product produced from a supply chain involving severe labor abuses.  Dana alleges that she purchased products or paid a higher price for them because she was deceived regarding the labor practices in the supply chain. That actual, particularized injury is sufficient to establish standing.

## C.   CLRA Claim

The CLRA prohibits certain enumerated "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Dana argues that Hershey's failure to disclose labor abuses on its packaging violates subsection (a)(2) by "[m]isrepresenting the source" of the chocolate, subsection (a)(5) by "[r]epresenting that goods . . . have . . . characteristics . . . which they do not have," and subsection (a)(7) by "[r]epresenting that goods . . . are of a particular standard."  *Id.* § 1770(a)(2), (5), (7); *see* Compl. ¶¶ 88−91; Opp'n at 20.  In her Opposition, Dana makes clear that these theories are based on "Hershey's omission

---

[8] Similarly, to use some of the examples given in those cases, it would be a bizarre result if sellers advertising food as halal or kosher, diamonds as conflict-free, or products as union-made could knowingly mix compliant and non-compliant products with impunity so long as there was no way for a buyer to trace the specific item he or she purchased back to the source.  The Eighth Circuit has nevertheless adopted that rule.  *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030−31 (8th Cir. 2014) (holding that customers lacked Article III standing to bring a claim based on allegedly false advertising of a product as using 100% kosher beef, where the plaintiffs could not show that the specific products they purchased contained non-kosher beef).  This Court respectfully disagrees with that result.  In this Court's view, if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III.  *See Hinojos*, 718 F.3d at 1104.

United States District Court
Northern District of California

of known child and slave labor in its supply chain," and that she "does not here contend that Hershey's partial misrepresentations give rise to its duty to disclose." Opp'n at 13 n.58.

"[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). "California courts have generally rejected a broad obligation to disclose . . . ." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). In *Wilson*, the Ninth Circuit held that, absent affirmative misrepresentations, an obligation to disclose under California law extends only to matters of product safety. *Id.* at 1141–43 (examining *Daugherty*, 144 Cal. App. 4th at 836, and subsequent decisions); *see also Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (unpublished and non-precedential) ("A manufacturer's duty [of disclosure] to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.").

At least one district court decision has limited *Wilson* to cases where a product was covered by a warranty that expired before the defect became apparent. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012). Central to the Central District's holding was its determination that "[t]he Ninth Circuit acknowledged that its requirement of a safety issue does not necessarily apply outside the products defect context where warranty protections are not available," and that *Wilson* "list[ed] cases where a safety issue was not required to trigger a duty to disclose." *Id.* (citing *Wilson*, 668 F.3d at 1142). The Court respectfully disagrees with *Stanwood*'s reading of *Wilson*. The cases listed at the page cited in *Wilson* by *Stanwood* do not support *Stanwood*'s holding: four cases explicitly based the materiality of an omission at least in part on whether it related to safety,[9] and the Ninth Circuit characterized the remaining two[10] as

---

[9] *O'Shea v. Epson Am., Inc.*, No. CV 09–8063 PSG (CWx), 2011 WL 3299936, at *7–9 (C.D.Cal. July 29, 2011); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) ("[F]or the omission to be material, the failure must pose 'safety concerns' . . . ."), *aff'd*, 462 F. App'x 660 (9th Cir. 2011); *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 n.*. (N.D. Cal. 2007) ("Moreover, plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard.").

14

having "arguably concerned safety issues." *Wilson*, 668 F.3d at 1142 & n.2. Accordingly, the

Court does not agree that *Wilson* is limited to cases where a warranty once existed but has since

expired. There are cases holding that a manufacturer has a greater duty to disclose defects that

arise *during* a product's express warranty period. *E.g.*, *Collins v. eMachines, Inc.*, 202 Cal. App.

4th 249, 257−58 (2011); *see also Wilson*, 668 F.3d at 1142 n.1 (discussing *Tietsworth v. Sears,*

*Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)). But there is no allegation that Hershey

made any warranty of its chocolate products that would be relevant in this case.[11]

The Court agrees with Judge Seeborg's conclusion that the weight of authority limits a

duty to disclose under the CLRA to issues of product safety, unless disclosure is necessary to

counter an affirmative misrepresentation. *See Hodsdon*, 2016 WL 627383, at *6 (declining to

follow *Stanwood* in light of "overwhelming authority to the contrary," and collecting cases). The

Court also concludes that a plain reading of *Wilson* governs this case, and this "Court is not free to

deviate from the Ninth Circuit's construction of California law in *Wilson* absent a subsequent

interpretation from California's courts that the interpretation was incorrect." *Rasmussen v. Apple,*

*Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014) (following *Wilson* despite concluding that its

basis in California law is "subject to reasonable debate") (citing *Kona Enters., Inc. v. Estate of*

*Bishop*, 229 F.3d 887, 884 n.7 (9th Cir. 2000)). Further, the Court agrees with Judge Seeborg and

Hershey that some bright-line limitation on a manufacturer's duty to disclose is sound policy,

given the difficulty of anticipating exactly what information some customers might find material

to their purchasing decisions and wish to see on product labels. *See Hodsdon*, 2016 WL 627383,

at *6 ("[*Stanwood*'s and Dana's] definition of a material omission has stunning breadth, and could

leave manufacturers (chocolate or otherwise) little guidance about what information, if any, it

must disclose to avoid CLRA or UCL liability."); Mot. at 12−13 (discussing examples of

---

[10] *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762 (C.D.Cal. June 12, 2009); *Bristow v. Lycoming Engines*, No. CIV. S-06-1947 LKK GGH, 2007 WL 1106098 (E.D.Cal. Apr. 10, 2007).

[11] *Wilson* also acknowledges cases recognizing a broader duty of disclosure in the sale of services, rather than products. *Wilson*, 668 F.3d at 1143 (citing, *e.g.*, *In re Mediscan Research, Ltd.*, 940 F.2d 558 (9th Cir. 1991)). The chocolate products at issue in the present case are products, not services.

1    consumers making purchasing decisions based on "businesses' positions on social issues; their

2    support for or opposition to legislation; their political donations; their environmental record; their

3    employment practices; and their ties to certain nations or regimes" (footnotes omitted)).  There are

4    countless issues that may be legitimately important to many customers, and the courts are not

5    suited to determine which should occupy the limited surface area of a chocolate wrapper.

6        A duty to disclose under California law does not extend to all "information [that] may

7    persuade a consumer to make different purchasing decisions."  *Hodsdon*, 2016 WL 627383, at *6

8    (citing *Wirth*, 2016 WL 471234, at *5−6).  Because Dana does not allege any omission of known

9    dangers to the safety of customers, there is no duty to disclose applicable to this case, and Dana's

10   CLRA claim is therefore DISMISSED.  A contrary result would create "a broad obligation to

11   disclose," which "California courts have generally rejected."  *Wilson*, 668 F.3d at 1141.

12       Even if that were not so, the parties agree Dana would still need to show one of the

13   following to support a duty to disclose: (1) a fiduciary relationship between Hershey and Dana;

14   (2) that Hershey had "exclusive knowledge of material facts not known or reasonably accessible

15   to" its customers; (3) that Hershey actively concealed a material fact; or (4) that Hershey had made

16   misleading partial representations.  Opp'n at 12 (quoting *Doe v. SuccessfulMatch.com*, 70 F. Supp.

17   3d 1066, 1076 (N.D. Cal. 2014)); Mot. at 9−10.  Dana relies solely on the "exclusive knowledge"

18   test.  Opp'n at 13−15.  But even if "courts do not apply 'exclusivity' with . . . rigidity," *see*

19   *Johnson v. Harley-Davidson Motor Co. Grp.*, 285 F.R.D. 573, 583 (E.D. Cal. 2012), it is difficult

20   to see how *any* definition of "exclusive knowledge" could include a case where, by Dana's own

21   allegations: "Hershey acknowledges as it must, the child and slave labor in its Ivorian supply

22   chain" in its Corporate Social Responsibility Report, Compl. ¶ 21; the industry acknowledged the

23   issue in the Harkin-Engel Protocol in 2001—more than *ten years* before the statute of limitations

24   period for Dana's CLRA claim—and has repeatedly admitted its failure to even develop a

25   comprehensive certification system in the years since, *id.* ¶¶ 27−31; and in 2006 the United States

26   Department of Labor commissioned Tulane University to publish reports detailing labor abuses in

27   the chocolate industry supply chain, *id.* ¶¶ 32−36; among other public disclosures detailed in the

28   Complaint.

United States District Court
Northern District of California

1    Further, even if Dana could adequately plead that Hershey had a duty to disclose the labor

2    abuses in its supply chain on its product labels, it is far from clear that such information falls

3    within the categories of representations governed by the CLRA.  Dana invokes provisions barring

4    misrepresentation of the "source," "characteristics," and "standard" of a product.  Opp'n at 20

5    (citing Cal. Civ. Code § 1770(a)(2), (5), (7)).  While the CLRA provides that it "shall be liberally

6    construed and applied to promote its underlying purposes" of consumer protection, Cal. Civ. Code

7    § 1760, it does not explicitly discuss representations regarding labor practices, *see id.* § 1770(a),

8    and Dana cites no authority holding that any of the enumerated categories she relies on are so

9    broad as to encompass labor abuses.  Because the Court holds that Hershey did not have a duty to

10   disclose labor abuses in its supply chain on its product labels, the Court declines to resolve

11   whether misrepresentations regarding labor practices can fall within the scope of the CLRA.

12        **D.    UCL Claim**

13        California's UCL prohibits unfair competition, defined as "any unlawful, unfair, or

14   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Dana brings her claim

15   under each of these prongs, and Hershey argues that each must be dismissed.

16        The "unlawful" prong of Dana's Complaint is based solely on Hershey's purported

17   violation of the CLRA.  Compl. ¶ 74.  As discussed above, the Court holds that Dana fails to state

18   a CLRA claim.  Hershey's Motion is therefore GRANTED as to this prong of Dana's UCL claim.

19        The "fraudulent" prong fails for similar reasons.  As Judge Seeborg noted in *Hodsdon*,

20   California courts have held that "'[a]bsent a duty to disclose, the failure to do so does not support

21   a claim under the fraudulent prong of the UCL.'"  *Hodsdon*, 2016 WL 627383, at *6 (quoting

22   *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)); *see also Daugherty*,

23   144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative

24   duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").  Because, as

25   discussed above, the Court holds that Hershey had no affirmative duty to disclose severe labor

26   abuses in its supply chain on its product labels, Hershey's Motion is GRANTED as to the

27   "fraudulent" prong of Dana's UCL claim.

28        That leaves the "unfair" prong, the test for which remains somewhat unsettled in the

United States District Court
Northern District of California

17

California courts.  Courts previously held a practice to be "'unfair' . . . when it offends an

established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.

App. 4th 861, 886−87 (1999) (citation and internal quotation marks omitted).  "This test involves

balancing the harm to the consumer against the utility of the defendant's practice." *Lozano v.

AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (citing *S. Bay*, 72 Cal. App. 4th at

886).  The California Supreme Court, however, found that the *South Bay* test was "too amorphous

and provide[d] too little guidance to courts and businesses" in a UCL case between competitors,

and held instead that:

> When a plaintiff who claims to have suffered injury from a direct
> competitor's "unfair" act or practice invokes section 17200, the
> word "unfair" in that section means conduct that threatens an
> incipient violation of an antitrust law, or violates the policy or spirit
> of one of those laws because its effects are comparable to or the
> same as a violation of the law, or otherwise significantly threatens or
> harms competition.

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185, 187.  The *Cel-Tech* court

explicitly declined to decide what test applied to actions brought by consumers, as opposed to by

competitors.  *Id.* at 197 n.12.

In the years since *Cel-Tech*, some courts have continued to use the *South Bay* test for cases

brought by consumers, while others have followed *Cel-Tech*'s lead and "require[d] that the

unfairness be tied to a 'legislatively declared' policy," *Lozanoa v. AT & T Wireless Servs., Inc.*,

504 F.3d 718, 736 (9th Cir. 2007), or in other words, "'that the UCL claim be tethered to specific

constitutional, statutory, or regulatory provisions,'" *Hodsdon*, 2016 WL 627383, at *7 (quoting

*McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014)).  "Absent guidance

from the California courts about the proper definition of an 'unfair' business practice, federal

courts have applied both tests." *Id.* (citing *Lozano*, 504 F.3d at 736).

The "legislative policies" on which Dana relies are the United Nations' International Labor

Convention No. 182 and the United Nations' Universal Declaration of Human Rights—the former

forbidding the worst forms of child labor, the latter forbidding slavery, and both having been

ratified by the United States.  Opp'n at 18−19.  The crux of Dana's claim, however, is not that

United States District Court
Northern District of California

United States District Court
Northern District of California

Hershey utilized slave labor or the worst forms of child labor, but rather that Hershey does not disclose the existence of those labor abuses in its supply chain on the packaging of its products. Dana has not identified any legislatively declared policy requiring such disclosure,[12] nor does she cite any authority for the proposition that where some of a manufacturer's suppliers contravene a legislatively established policy, it is "unfair" within the meaning of the UCL for the manufacturer to fail to disclose those violations on its product packaging.  The Court declines to make that leap.

At the hearing, Dana's counsel suggested for the first time that Dana could amend her UCL claim to tether the "unfair" prong to the Department of Labor's listing of goods produced with child labor and forced labor, *see* 22 U.S.C. § 7112(b), and to California's Supply Chains Act, which is discussed in more detail below in the context of Hershey's safe harbor doctrine argument, *see* Cal. Civ. Code § 1714.43.  Although both statutes call for certain disclosures related to labor conditions, neither expresses any policy of disclosure on product labels.  Amending Dana's Complaint to reference those statutes would not remedy the defects of her UCL claim.

Turning to the *South Bay* balancing test, the distinction between the underlying labor practices and the failure to disclose once again undermines Dana's claim.  The slave labor and child labor alleged in the Complaint would certainly qualify as "immoral, unethical, oppressive, [and] unscrupulous."  *See S. Bay*, 72 Cal. App. 4th at 887.  But can the same be said about the failure to disclose Hershey's suppliers' labor abuses on Hershey's product packaging? Considering this issue in *Hodsdon*, Judge Seeborg held as follows:

> The harm at issue here is that Hodsdon may not have purchased Mars's chocolate products at all, or would have paid less for them, had he been aware of the prospect for child labor in Mars's supply chain. Such information is, in fact, readily available to consumers on Mars's website. Given that Hodsdon, like any other consumer, has access to information about the source of Mars's cocoa beans, the absence of such information on the packaging is not "substantially injurious to consumers" or necessarily immoral. Granting that the labor practices at issue are immoral, there remains an important distinction between them and the actual harm for which Hodsdon

---

[12] While Dana does not argue in the context of the "unfair" prong that either the CLRA or the FAL constitutes such a policy, her arguments that those statutes compel the disclosure she seeks could perhaps be transposed to this claim.  For the reasons discussed above and below in the context of Dana's CLRA and FAL claims, the Court holds that neither statute represents a policy requiring the disclosure of labor abuses in a supply chain on product labels.

> seeks to recover, namely his purchase of Mars's chocolate products absent any disclosure. Mars's failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical, and Hodsdon's UCL claim may therefore not advance.

*Hodsdon*, 2016 WL 627383, at *7.  This Court agrees.  Because Dana has not adequately alleged a violation of either test for the "unfair" prong, or a violation of the "unlawful" or "fraudulent" prongs, her UCL claim is DISMISSED.

###### E.   FAL Claim

The FAL makes it unlawful for any person "to make or disseminate or cause to be made or disseminated before the public . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  The plain language of the statute—which prohibits *making*, *disseminating*, or *causing* the dissemination of false or misleading statements—does not encompass omissions.  Several cases have therefore held that "[t]here can be no FAL claim where there is no 'statement' at all"—or in other words that an omission, even of material facts, does not violate the FAL.  *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015); *see also Hodsdon*, 2016 WL 627383, at *4; *Stanwood*, 941 F. Supp. 2d at 1222.

Dana cites four federal district court cases and two California appellate cases that purportedly held to the contrary, allowing FAL claims to proceed based on omissions.  Opp'n at 17 nn.89 & 91.  One of those cases actually dismissed the plaintiff's FAL claim to the extent that it was based on affirmative misrepresentations, and did not address the FAL claim at all in its discussion of the plaintiff's fraudulent omission theory.  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1135−36, 1140 (N.D. Cal. 2013) (discussing only the CLRA, UCL, and common law in the context of fraudulent omissions, and granting leave to amend only as to those claims).  Both of the California cases were based on claims that print, television, and/or telephone advertising campaigns—which inherently consist of affirmative statements—were misleading for failure to disclose fees associated with financial products or limitations on the use of coupons. *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1224 (2013) ("The lawsuit claimed there were

misleading or deceptive statements in print and television advertising . . . ."); *People v. Toomey*, 157 Cal. App. 3d 1, 17 (1984) ("We encounter little difficulty concluding that Holiday's telephone solicitations and newspaper advertisements were likely to deceive consumers.").  Two of the other cases, which Judge Seeborg considered in *Hodsdon*, both also involved some degree of affirmative misrepresentation.  *See Hodsdon*, 2016 WL 627383, at *4.  In one, the defendant allegedly "misrepresented that it would take 'reasonable steps' to secure Plaintiffs' Personal Information [stored on or transmitted via the defendant's network], and that [it] use[d] industry-standard encryption to prevent unauthorized access to sensitive financial information," but failed to disclose that its safeguards were inadequate and network intrusions occurred.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990−91 (S.D. Cal. 2014) (quoting the plaintiffs' complaint; final alteration in original).  In the other case, the defendants advertised their washing machines as "Xxtra Sanitary" and "high efficiency," but allegedly concealed that the machines developed mold and were not efficient.  *Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *1−3 (C.D. Cal. Aug. 31, 2011).  That leaves only a decision by the Southern District of California, which held without analysis that the FAL's prohibition of untrue or misleading statements also "requires a duty to disclose" in at least certain circumstances.  *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1192 (S.D. Cal. 2015) (holding that the plaintiffs plausibly stated a claim under the FAL where the defendant failed to disclose a "potentially dangerous substance" in the beverages it sold).

Although neither *Sony* nor *Tait* cited the alleged misrepresentations as the reason for allowing the plaintiffs' omissions claims to proceed, the Court agrees with Judge Seeborg's conclusion that the outcome in both cases is consistent with a requirement that there be at least *some* affirmative misrepresentation to support a claim under the FAL.  *See Hodsdon*, 2016 WL 627383, at *4.  As for *Cortina*, and also to the extent that any of the other cases discussed above are not consistent with that rule, the Court respectfully disagrees with their interpretation of the FAL's statutory language.  Because Dana bases her claims on pure omissions, Opp'n at 13 n.58, she fails to allege that Hershey "ma[d]e or disseminate[d] or cause[d] to be made or disseminated"

1    any false or misleading statement, and thus fails to state a claim under the FAL.[13]

2    **F.    Additional Defenses**

3    In light of the holdings above that each of Dana's claims must be dismissed, the Court

4    need not reach the parties' arguments regarding Hershey's two additional defenses: that the

5    California legislature has created a "safe harbor" against Dana's claims by enacting the Supply

6    Chains Act, *see* Mot. at 6−9; and that the relief Dana seeks would compel Hershey's speech in

7    violation of the First Amendment, *id.* at 23−25.  Although this Order need not and does not

8    resolve either of those issues, the Court briefly addresses the safe harbor argument.

9    "[T]he reach of the UCL is broad, but it is not without limit and may not be used to invade

10   'safe harbors' provided by other statutes." *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014)

11   (citing *Cel-Tech*, 20 Cal. 4th at 182).  "If the Legislature has permitted certain conduct or

12   considered a situation and concluded no action should lie, courts may not override that

13   determination." *Id.*  The California Supreme Court has described the scope of the doctrine as

14   follows:

15   > A plaintiff may thus not "plead around" an "absolute bar to relief"
     > simply "by recasting the cause of action as one for unfair
     > competition." (*Manufacturers Life Ins. Co. v. Superior Court* (1995)
16   > 10 Cal. 4th 257, 283, 41 Cal. Rptr. 2d 220, 895 P.2d 56.) The rule
     > does not, however, prohibit an action under the unfair competition
17   > law merely because some other statute on the subject does not, itself,
     > provide for the action or prohibit the challenged conduct. To
18   > forestall an action under the unfair competition law, another
     > provision must actually "bar" the action or clearly permit the
19   > conduct.

20   *Cel-Tech*, 20 Cal. 4th at 182−83; *see also Loeffler*, 58 Cal. 4th at 1125 (emphasizing the

21   requirement that another statute "*clearly permit*" the challenged conduct).

22   The Supply Chains Act requires certain large corporations to disclose on their websites

23   their "efforts to eradicate slavery and human trafficking from [their] direct supply chain[s] for

24   tangible goods offered for sale." Cal. Civ. Code § 1714.43(a)(1).  The statute does not "actually

25   'bar'" any action.  *See Cel-Tech*, 20 Cal. 4th at 183.  Nor does it "clearly permit" any conduct

26

27   _____

28   [13] Moreover, even if the FAL allowed claims based on omissions, Dana has not established
     any duty to disclose the information at issue, as discussed above in the context of her CLRA
     claim.

United States District Court
Northern District of California

1    except disclosure of efforts to eradicate slavery and human trafficking.  *See id.*; *Loeffler*, 58 Cal.

2    4th at 1125.  There are also discrepancies between the subject matter of the Supply Chains Act and

3    the disclosure Dana seeks in this case.  As Judge Seeborg noted in *Hodsdon*, the statute "concerns

4    slavery and human trafficking, not [other forms of abusive] child labor," and "the legislative

5    history is silent about whether the legislature contemplated disclosure on labels."  *Hodsdon*, 2016

6    WL 627383, at *9.  Moreover, there is a difference between, on one hand, advertising the steps a

7    company has taken to reduce slavery in its supply chain (as the statute requires), and on the other,

8    disclosing that such slavery persists (as Dana seeks here).  That the legislature mandated the

9    former in certain instances does not necessarily indicate a conclusion that the latter could never be

10   required under existing consumer protection laws.

11          The Ninth Circuit very recently addressed the safe harbor doctrine in *Ebner v. Fresh, Inc.*,

12   a case alleging deception where a cosmetic product label disclosed the net weight of the product

13   contained in a tube but failed to disclose that "only 75% of that product is reasonably accessible."

14   *Ebner*, __ F.3d __, No. 13-56644, Slip Op. at 8, 2016 WL 1056088, at *3 (9th Cir. Mar. 17, 2016).

15   The panel held that the disclosure of the actual net weight fell within the safe harbor because

16   "[b]oth federal and California law affirmatively require cosmetic manufacturers to include an

17   accurate statement of the net weight of included cosmetic product."  *Id.*  The plaintiff also brought

18   an omission claim, however, arguing that failure to explain how much of the product was

19   accessible rendered the accurate weight disclosure "deceptive and misleading."  *Id.*  The panel

20   held that "[u]nlike a claim seeking to alter the net weight declaration itself, this [omission] claim

21   does not fall within the safe harbor because there is no law expressly permitting the omission of

22   supplemental statements."  *Id.*  Similarly, here, Hershey has not identified any law "expressly

23   permitting the omission of" disclosures on product labels regarding slave labor and the worst

24   forms of child labor in a product's supply chain.  *See id.*

25          The Court recognizes that recent district court decisions have held that the Supply Chains

26   Act creates a safe harbor against claims based on non-disclosure of labor abuses in a supply chain.

27   *Wirth*, 2016 WL 471234, at *6−9; *Barber*, 2015 WL 9309553, at *2−5; *De Rosa*, 2016 WL

28   524059 (summarily dismissing for the reasons stated in *Barber*); *Hughes*, 2016 WL 524057

(same).[14]  Because this Court holds for the reasons stated above that California's consumer protection laws do not create any obligation to make the disclosures Dana seeks, the question of whether the Supply Chains Act would shield against such a duty is ultimately moot, and the Court need not and does not resolve whether *Wirth* and *Barber* are correct or applicable to the case at hand.  The Court nevertheless echoes Judge Seeborg's skepticism that the safe harbor doctrine is as broad as Hershey contends.

## IV.   CONCLUSION

For the reasons stated above, Dana's claims under the CLRA, the UCL, and the FAL fail to state a claim on which relief may be granted, and are therefore DISMISSED.  Dana has made clear that she does not intend to pursue a claim based on affirmative misrepresentations.  *See* Opp'n at 13 n.58.  The Court therefore finds that leave to amend would be futile, and dismisses this action with prejudice.

**IT IS SO ORDERED.**

Dated: March 29, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

---

[14] Appeals of all of these cases are currently pending before the Ninth Circuit.

24